# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STEVE HINDI; GREG CAMPBELL; and SHARK (SHOWING ANIMALS RESPECT AND KINDNESS), formerly known as CHARC (CHICAGO ANIMAL RIGHTS COALITION), <br><br> Plaintiffs, <br> v. <br><br> THOMAS GOOCH III; ALBERT WYSOCKI; JOHN VAN DIEN; GARY DEL RE, the Sheriff of Lake County; MICHAEL WALLER, State's Attorney of Lake County; THE VILLAGE OF WAUCONDA, a municipal corporation; and DANIEL QUICK, the Chief of Police of the Village of Wauconda, <br><br> Defendants. | No. 02 C 2927 <br><br> Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Steve Hindi, Greg Campbell, and Showing Animals Respect and Kindness ("SHARK"), filed suit against Defendants, Thomas Gooch III, Albert Wysocki, John Van Dien, Gary Del Re, Michael Waller, the Village of Wauconda, and Daniel Quick. Count I alleges conspiracy to retaliate for the exercise of First Amendment rights. Count II seeks declaratory and injunctive relief against Wauconda and Quick. Count III alleges conspiracy to commit a malicious prosecution. Previously, Wauconda, Quick, and Wysocki were dismissed from the suit; and Counts II and III were dismissed in their entirety by the Court. The only claim remaining is Count II, against Defendants, Gooch, Van Dien, and Waller.

Currently before the Court are Gooch's Motion for Summary Judgment, Van Dien's Motion for Summary Judgment, and Waller's Motion for Summary Judgment.

## BACKGROUND

SHARK, formally known as the Chicago Animal Rights Coalition ("CHARC"), is a voluntary association of persons advocating the humane treatment of animals. (Van Dien's 56.1(a)(3) Statement ¶ 5). Hindi and Campbell are members of SHARK. (Id., ¶ 6). SHARK does not have a formal membership list, and people on its mailing list do not receive membership cards. (Id., ¶ 8). There is no formal application to become a member of SHARK or due requirements. (Id., ¶¶ 9-10). Hindi defines SHARK members as those who receive the newsletter or who are on the organization's email list and those that participate in protesting particular activities. (Id., ¶ 11; Plaint.'s Response ¶ 11).

Van Dien was at all relevant times a Deputy Sheriff of Lake County, Illinois. (Van Dien's 56.1(a)(3) Statement ¶ 12). Del Re was at all relevant times the Sheriff of Lake County, Illinois. (Id., ¶ 14). Gooch was at all relevant times an attorney for Van Dien. (Id., ¶ 15). Wysocki was a law partner of Gooch. (Id., ¶ 16).

The Wauconda Chamber of Commerce ("WCC") has presented the annual Wauconda Rodeo for several years as a public event. (Van Dien's 56.1(a)(3) Statement ¶ 20). In 1993, CHARC organized a protest of the rodeo, including picketing various businesses in Wauconda. (Gooch's 56.1(a)(3) Statement ¶ 20).

In 1995, Plaintiffs undertook another protest of the rodeo; and an altercation with off-duty Lake County Sheriff's Deputies, who had been hired as a private security, ensued. (Gooch's 56.1(a)(3) Statement ¶ 22). During the protest, Campbell and Hindi were arrested. (Id., ¶ 23).

On July 13, 1996, Plaintiffs again protested the rodeo; and another altercation with Sheriff's Deputies ensued. (Gooch's 56.1(a)(3) Statement ¶ 24). Campbell and Hindi, along with several

other SHARK members, were arrested at the 1996 protest. (Id., ¶ 25). The charges were originally dismissed but were subsequently reinstated. (Id., ¶ 26). Van Dien worked at the annual rodeo as a Lake County Sheriff's Deputy on July 13, 1996. (Id., ¶ 27).

Susan Pieszczek, one of the protesters on July 13, 1996, claimed that the videotape from her camera that was seized on July 13, 1996, was missing. Van Dien was aware of Pieszczek's claim. (Plaint.'s 56.1(b)(3) Statement ¶ 3). Van Dien cannot remember whether he handed the camera seized from Pieszczek to someone on July 13, 1996. (Id., ¶ 12).

In October 1996, Hindi and several other members of SHARK appeared at the State's Attorney's Office without an appointment. (Plaint.'s 56.1(b)(3) Statement ¶ 45). At that time, Hindi and the group met with Michael Mermel, the head of the Felony Review Section of the Lake County State's Attorney's Office. (Id., ¶ 44). Mermel informed the group that he was not a gatherer of facts and any decision about an investigation would be left to Lake County State's Attorney Michael Waller, who was involved in trying a death penalty case. (Id., ¶ 47). Mermel further explained that he had no authority to make any decisions with regard to an investigation and that decisions would be left to Waller. (Id., ¶ 47). Subsequently, Mermel informed Waller of the names of the four people at the meeting and that they wanted to complain about the Sheriff; Mermel never heard about the matter again. (Id., ¶ 49).

At the end of October 1996, Robyn Douglass, a reporter for the Earth Network, met with Waller. (Plaint.'s 56.1(b)(3) Statement ¶ 60). At the meeting, Douglass informed Waller that, in her opinion, the videotape she had with her depicted, among other things, Van Dien tackling two women, the seizure of a camera which was contrary to Van Dien's police report, which stated he found the camera, and Van Dien's apparently removing a tape from a camera which Douglass

informed Waller was still missing. (Id., ¶¶ 61-63). Waller refused to look at the videotape so Douglass left the videotape with Waller's secretary. (Id., ¶ 64). That same day, Douglass gave a copy of the videotape to Assistant State's Attorney George Strickland, providing him with the same information she gave to Waller. (Id., ¶ 65).

In February 1997, Douglass met with Lake County State's Attorney Daniel Shanes and provided him with six videotapes which contained all of the footage that was taken by the Earth Network at the July 13, 1996 rodeo. (Plaint.'s 56.1(b)(3) Statement ¶ 66). On March 10, 1997, Douglass delivered the same tapes to Del Re's office. (Id., ¶ 67).

On May 5, 1997, Hindi, Campbell, and a few other SHARK members distributed leaflets in front of the Lake County Sheriff's Department. The "protesters" had a video monitor and a video of events that occurred on July 13, 1996. The "event" was well publicized. (Van Dien's 56.1(a)(3) Statement ¶ 24). The leaflets distributed at the event read:

### WHEN WILL LAKE COUNTY INVESTIGATE BRUTAL SHERIFF'S DEPUTY?

One evening last July, a man brutalized and assaulted three women outside Wauconda. This is, of course, a horrendous and disgusting crime. But the worst part about it is the assailant was a <u>Lake County Sheriff's Deputy!</u>

The assailant, Deputy John Van Dien, weighs almost <u>three hundred pounds</u>. None of his victims weigh more than 130 pounds. <u>One of them weighs ninety pounds.</u> Van Dien actually arrested one of the women, in an attempt to cover up his crime. She went to court, and was found <u>not guilty!</u>

Fortunately, Deputy Van Dien was videotaped assaulting two of the women. You would think that this would make the punishment of this unfit police officer easy. Regrettably, <u>this has not been the case.</u>

4

> Ever since the assaults, citizens have been trying to get Sheriff Gary Del Re or State's Attorney Michael Waller to investigate. Both have steadfastly refused. Why?
>
> See what you think! Just ask a protester, and you can see the assaults on video for yourself - right here - right now! <u>You should see it, because we don't need bad police officers.</u> **The next victim might be your wife, your daughter, your mother, <u>or even you!</u>**

(Id., ¶¶ 25-29).

Van Dien learned that Plaintiffs were protesting against him after being told about the activities of May 5, 1997. (Van Dien's 56.1(a)(3) Statement ¶ 30). Subsequently, Van Dien obtained a copy of the leaflet that the protesters were distributing and a copy of the video that they showed at the protest. (Id., ¶ 31). Van Dien then contacted Gooch to arrange an appointment to discuss Plaintiffs' actions. (Id., ¶ 32). Van Dien did not have a written contract for representation with Gooch, only a "gentleman's agreement"; and in the event of recovery, Van Dien neither knew nor could remember how the proceeds would be divided. (Plaint.'s 56.1(b)(3) Statement ¶ 16). Gooch believes that he a had contingent-fee arrangement with Van Dien. (Id., ¶ 21). Gooch does not have a copy of the contingent-fee agreement and cannot find such agreement. (Id., ¶ 22).

Van Dien read in the local newspaper that Waller and Del Re reviewed the videotape and found that there was no reason to investigate Van Dien further. (Van Dien 56.1(a)(3) Statement ¶ 33). Waller was quoted in *The Waukegan News - Sun* newspaper, published on May 6, 1997, that "Our conclusion was there wasn't any basis to investigate," based on a review of the tape by his office's felony review division. (Id., ¶ 34). The same newspaper article attributed a statement from Del Re that, "He said the state's attorney's office looked into the excessive force issue and found no cause to move forward." (Id., ¶ 35). Waller was quoted in the May 6, 1997 *Daily Herald* as stating,

5

"A complete investigation of their complaints was done, and their complaints of brutality and excessive force were determined to be unfounded .... Deputy Van Dien used only such force as was necessary to effect the arrest." (Id., ¶ 36). Van Dien relied upon the contents of the articles as a basis for filing a defamation lawsuit. (Id., ¶ 37). Hindi does not have any information that Van Dien was ever informed by anyone that the statements attributed to Waller in the two newspaper articles were in fact false. (Id., ¶ 38).

Van Dien has never seen a report of the investigation into his conduct by the Sheriff's Department or State's Attorney's Office of Lake County. (Plaint.'s 56.1(b)(3) Statement ¶ 5). Van Dien was never interviewed by any investigator connected with the Sheriff's Department or State's Attorney's Office of Lake County. (Id., ¶ 6). Del Re became aware of Hindi's complaints about Van Dien's conduct on July 13, 1996, and Hindi's demand for an investigation from the newspapers. (Id., ¶ 35).

Van Dien filed a defamation lawsuit through his attorney, Gooch, on May 14, 1997. (Van Dien's 56.1(a)(3) Statement ¶ 39). Van Dien alleged that the acts taken by the Plaintiffs on May 5, 1997, were performed with malice, as certain members of the SHARK organization were about to be placed on trial after being arrested by Van Dien and other Lake County Deputies for their previous conduct at the July 1996 rodeo. (Id., ¶ 40). Van Dien alleged that the dissemination of the leaflet was an attempt to assassinate the integrity of the Lake County Sheriff's Department and curry public favor and opinion immediately before the upcoming criminal trial; also, that the document was published and disseminated as a part of a massive public relations campaign begun by the SHARK Plaintiffs prior to the 1997 rodeo. (Id., ¶ 41).

On May 20, 1997, Campbell was tried and convicted in Lake County for obstructing a peace officer and resisting arrest for his conduct at the July 1996 rodeo. (Van Dien's 56.1(a)(3) Statement ¶ 42).

On May 14 and 15, 1997, Earth Network reporter Douglass was summoned to the Lake County Courthouse for the purpose of operating video equipment. (Plaint.'s 56.1(b)(3) Statement ¶ 68). Douglass assisted by editing the videotape pursuant to the directions of Assistant State's Attorney Shanes. (Id., ¶ 69). During the editing process, Douglass shared with Shanes her opinion that Van Dien seized Pieszczek's camera and removed the tape from the camera. (Id., ¶ 70).

On July 8, 1997, CHARC, Hindi, Campbell, and several other SHARK members filed suit in the United States District Court for the Northern District of Illinois against Del Re, Van Dien, and several other Sheriff's Deputies seeking damages for conduct that occurred at the 1996 rodeo, including claims that the defendants violated the First Amendment rights of the plaintiffs who had protested the 1996 rodeo and claims of excessive force against Van Dien by plaintiffs, Teri Campbell, Christine Grishas, and Susan Pieszczek. (Del Re's 56.1(a)(3) Statement ¶ 23). Following an evidentiary hearing on July 8, 1998, Judge James Moran denied the plaintiffs' motion for a temporary restraining order and preliminary injunction prior to the 1998 rodeo. (Id., ¶ 24). Thereafter, SHARK abandoned its First Amendment claims. (Id., ¶ 25). In July, following a bench trial, Judge Moran ruled in Van Dien's favor as to the plaintiffs' excessive force claims. (Id., ¶¶ 26-27).

In September 2000, Van Dien understood that the 1997 defamation lawsuit was voluntarily dismissed; Van Dien wanted it reinstated. (Van Dien's 56.1(a)(3) Statement ¶ 43). Van Dien re-

filed the defamation suit on September 26, 2000. The second defamation lawsuit was voluntarily dismissed on February 14, 2002. (Gooch's 56.1(a)(3) Statement ¶ 18).

Van Dien did not speak with anyone from the Wauconda Chamber of Commerce before he filed either defamation lawsuit. (Van Dien's 56.1(a)(3) Statement ¶ 46). Nor did Van Dien speak with Del Re or Waller before filing either defamation lawsuit. (Id., ¶ 47). Hindi does not have any information that Wysocki contacted Waller or Del Re before the Van Dien lawsuit was filed. Nor does Hindi have any information that Gooch was acting in concert with Waller or Del Re in filing the defamation lawsuits. (Id., ¶ 50). Hindi has no information that any members of the WCC contacted Gooch. (Id., ¶ 51).

Plaintiffs of the instant suit allege that as a direct and proximate result of the re-filing of the defamation lawsuit, they were denied full access and opportunity to exercise their First Amendment rights, that Hindi and SHARK were required to expend time and money in defense of the defamation lawsuit, and that SHARK suffered a depletion of its members as a result of the intimidation by the filing of the defamation lawsuit. (Van Dien's 56.1(a)(3) Statement ¶ 52). Plaintiffs further allege that SHARK lost the opportunity to recruit new members and was compromised in its fund-raising efforts and that SHARK abandoned their attempts to organize public protests at the rodeo in light of the second lawsuit. (Id., ¶¶ 53, 55).

Hindi cannot identify anyone who said they no longer wanted to contribute to SHARK as a result of the lawsuits. (Van Dien 56.1(a)(3) Statement ¶ 54). SHARK members protested at the Wauconda rodeo each year between 1997 and 2001. (Id., ¶ 56). Both Hindi and Campbell protested at the Wauconda rodeo in 2001, after Van Dien re-filed his defamation lawsuit. (Id., ¶ 57). Hindi estimated that the number of people present to protest the rodeo in 2001 was between 20 and 30

protesters. (Id., ¶ 58). Hindi and others in SHARK decided to abandon the public aspects of the protests after the 2001 protest and, instead, focus on documenting the rodeo with video equipment. (Id., ¶ 59). SHARK's membership list has continued to grow each year between 1998 and 2002. (Gooch's 56.1(a)(3) Statement ¶ 50). However, prior to 2001, the numbers of people who wished to publicly protest began to decrease after the re-filing of Van Dien's lawsuit. (Plaint.'s 56.1(b)(3) Statement ¶ 58).

SHARK's 1999 State of Illinois tax form indicates that it received $67,286 in contributions from direct public support. (Van Dien's 56.1(a)(3) Statement ¶ 60). SHARK's 2000 State of Illinois tax form indicates that it received $126,683 in contributions from direct public support. (Id., ¶ 61). SHARK's 2001 State of Illinois tax form indicates that it received $245,401 in contributions from direct public support. (Id., ¶ 62).

## ANALYSIS

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986) (*Celotex*). All of the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*). However, a party cannot defeat summary judgment by relying on unsubstantiated facts. *See Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001) (*Greer*).

The remaining Plaintiffs' claim alleges a conspiracy to retaliate against Plaintiffs for the exercise of their First Amendment rights. The basis of Plaintiffs' claim that survived the applicable statute of limitations, previously addressed by the Court, is the re-filing of Van Dien's defamation lawsuit in September 2000.

To establish Section 1983 liability through a conspiracy theory, a plaintiff must demonstrate an individual (or individuals) and a state official reached an understanding to deprive the plaintiff of a constitutional right and that the conspirators were willful participants in joint activity with the state or its agents. *See Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003) (*Williams*). The conspiracy may be established by circumstantial evidence, but such evidence cannot be speculative. *See Williams*, 342 F.3d at 785. For example, numerous phone calls between alleged conspirators, standing alone, only proves that the alleged conspirators remained in contact; an assertion that such phone calls constitute evidence of a conspiracy is simply speculative. *See Goetzke v. Ferro Corp.*, 280 F.3d 766, 778 (7th Cir. 2002). Furthermore, conclusory statements in the plaintiff's deposition do not create an issue of fact as to the presence of a conspiracy. *See Williams*, 342 F.3d at 785.

The undisputed facts fail to demonstrate that the Defendants reached an understanding to retaliate against the Plaintiffs for their exercise of their free speech at the rodeo. Essentially, Plaintiffs concede such but make a convoluted argument in an attempt to demonstrate an implied agreement among the Defendants to deprive the Plaintiffs of their First Amendment rights.

Plaintiffs argue that a reasonable jury could conclude that Van Dien initiated a "cover-up conspiracy" to hide the fact that Van Dien mistreated three women at the July 1996 rodeo. Del Re indirectly joined the cover-up conspiracy by deciding not to investigate Van Dien's conduct at the 1996 rodeo. Later, Gooch joined the conspiracy by re-filing the frivolous defamation lawsuit.

In their reply brief, Plaintiffs essentially argue that because Gooch and Van Dein did not execute a written attorney/client contract and because there is uncertainty as to the division of any proceeds from the suit, and no written contract can be found, that the suit is frivolous. And, therefore, the suit was only filed pursuant to a conspiracy between Gooch, Van Dein, Waller, and Del Re.

Plaintiffs rely on this tenuous chain of speculations as to all of the Defendants in an attempt to show when and why they joined the alleged conspiracy. Plaintiffs do not dispute that Van Dien did not speak with Del Re, Waller, or anyone from the WCC before filing his defamation lawsuit. Nor did Wysocki or Gooch speak with Waller or Del Re before the lawsuit was filed. Instead, Van Dien filed, and re-filed, his defamation lawsuit after he received information about the dissemination of a leaflet which accused Van Dien of assaulting women and implied a threat of more assaults. Furthermore, at the time Van Dien re-filed his defamation lawsuit, the alleged mistreatment of women by Van Dien was a matter of public record in light of the civil suit filed by SHARK and others involved in the July 1996 rodeo incident, including a ruling in favor of Van Dien as to the women's excessive force claims.

Even if Plaintiffs could demonstrate a genuine issue of material fact exists as to whether the Defendants reached an understanding to conspire against the Plaintiffs, Plaintiffs' claim fails because they have failed to demonstrate the deprivation of a constitutional right.

To prevail in any Section 1983 suit, a plaintiff must demonstrate that he has been deprived of a right secured by the Constitution and laws of the United States. *See Reichenberger v. Pritchard*, 660 F.2d 280, 284-85 (7th Cir 1981) (*Reichenberger*).

Plaintiffs argue they have been denied the right to access the appropriate investigative agency. However, Plaintiffs provide no evidence that they were denied the right to file any complaints or seek legal redress against Van Dien or any of the Defendants. Plaintiffs admit that they never filed a complaint to Waller about Van Dien's alleged misconduct at the July 1996 rodeo. Furthermore, Plaintiffs did seek legal redress by filing a lawsuit in federal court against Van Dien.

Plaintiffs also argue they have had to spend at least $7,500 in legal fees defending against Van Dien's re-filed defamation suit. However, legal fees paid by the Plaintiffs in the legal proceeding "cannot qualify as a constitutional injury absent a showing of deprivation of constitutional magnitude." *Reichenberger*, 660 F.2d at 285; *Sherwin Manor Nursing Center, Inc. v. McAuliffe*, 37 F.3d 1216, 1220 (7th Cir. 1994) ("an individual who is required to respond to inquiries to which everyone else, in ordinary course, is also required to respond has not suffered a constitutional injury of any kind").

Lastly, Plaintiffs have failed to demonstrate that Van Dien's re-filing of the defamation lawsuit chilled Plaintiffs' First Amendment rights. While Hindi testified at his deposition that the number of people who wished to protest began to decrease after Van Dien re-filed his lawsuit, the evidence, including Hindi's own testimony, contradicts Hindi's assertion. Hindi is unable to identify anyone who no longer wanted to contribute to SHARK as a result of the lawsuit; SHARK members continued to protest the rodeo; both Hindi and Campbell protested after Van Dien re-filed his lawsuit; Hindi and other SHARK members decided not to continue protesting and, instead, focus on videotaping events; and SHARK membership and contributions have significantly increased after the lawsuit was re-filed.

Based of the above, Plaintiffs have failed to demonstrate that a genuine issue of material fact exists as to the existence of a conspiracy or a constitutional injury to the Plaintiffs. Accordingly, Plaintiffs' remaining claim fails.

## CONCLUSION

For the reasons stated above, Gooch's Motion for Summary Judgment, Van Dien's Motion for Summary Judgment, and Waller's Motion for Summary Judgment are granted.

Dated: January 20, 2005

JOHN W. DARRAH
United States District Judge

13